IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEFFERY SCHWEITZER, JONATHAN SAPP AND RAUL RAMOS on behalf of the Phillips 66 Savings Plan and a class of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE INVESTMENT COMMITTEE OF THE PHILLIPS 66 SAVINGS PLAN, SAM FARACE and JOHN DOES 1-10,<br><br>    Defendants. | § § § § § § § § § § § § § § § §   Civil Action No. _____ |

## CLASS-ACTION COMPLAINT

Plaintiffs Jeffery Schweitzer, Jonathan Sapp and Raul Ramos ("Plaintiffs"), on behalf of the Phillips 66 Savings Plan (the "Plan") and a class of similarly situated participants in the Plan, brings this action against the Investment Committee of the Phillips 66 Savings Plan ("the Investment Committee"), the individual members of the Investment Committee and Sam Farace, the Plan's Financial Administrator, pursuant to §§ 404, 405, 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1109 and 1132.

## NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.     Plaintiffs are participants in the Plan. They bring this action concerning the Plan's investment in the common stock of ConocoPhillips on behalf of the Plan and a class of participants in the Plan whose retirement assets were invested in the "ConocoPhillips Stock Fund" and the "ConocoPhillips Leveraged Stock Fund" (together, the "ConocoPhillips Funds") from May 1, 2012 to the date of judgment in this Action (the "Class Period").

1

2.     The ConocoPhillips Funds are undiversified investment options that invest almost exclusively in a single security, ConocoPhillips stock (ticker COP). Defendants maintained the ConocoPhillips Funds as Plan investment options throughout the Class Period, causing approximately 25% of Plan assets to be invested in that single security.

3.     Defendants' decision to invest Plan assets in the single stock ConocoPhillips Funds during the Class Period was a breach of their duties of prudence and diversification under ERISA § 404, 29 U.S.C. § 1104.

4.     The Plan's ConocoPhillips Funds do not invest in an "employer security" as that term is defined under ERISA, and, thus, the investments are not exempt from ERISA's diversification requirements.

5.     The Plan's investment in ConocoPhillips stock violated ERISA's diversification and prudence requirements and was reckless under any common-sense investment strategy for several reasons. First, an investment fund holding hundreds of millions of dollars in a single security is, by definition, undiversified, exposing investors to extreme volatility and risk. Second, ConocoPhillips stock has an extremely high correlation to Phillips 66 stock (ticker PSX), the Plan's largest investment and the stock of the employer sponsoring the Plan. For this particular Plan, this high correlation made ConocoPhillips even more risky, imprudent, and further removed from an efficient portfolio than would the presence of ConocoPhillips stock in the average plan. Together, these two highly correlated stocks represented over half of the Plan's assets — an imprudent and unnecessary undiversified risk for the workers and retirees who depend on the Plan for their retirement savings. Third, ConocoPhillips is in the petroleum industry, a volatile, high-risk sector of the economy subject to boom-and-bust cycles.

6.      Prudent fiduciaries of retirement plans would not have permitted such concentrated investment.

7.      Defendants breached their duty under ERISA to diversify the Plan's investments in order to minimize the risk of large losses. Despite recognizing that diversification is a "key principle of sound investing" and removing other funds from the Plan's investment lineup to provide participants with "diversified, relatively low-cost and high-quality investment options," Defendants allowed the Plan to have an unreasonably high percentage of its assets invested in the ConocoPhillips Funds during the Class Period. The Plan's overly concentrated position caused participants to lose millions of dollars as the price of ConocoPhillips stock fell dramatically during the Class Period.

8.      Defendants also ignored the numerous warning signs that showed ConocoPhillips stock was an imprudent investment for retirement assets and then failed to take action as the price of ConocoPhillips stock dropped from $86.50 to its current price of approximately $50, causing the Plan's participants to lose tens of millions of dollars in retirement savings. Defendants should have been particularly aware of these risks concerning ConocoPhillips stock because the Plan invested over $1 billion, or approximately 25% of its assets, in the ConocoPhillips Funds during the Class Period.

9.      As a result of these breaches, each Defendant is liable to the Plan for all losses resulting from each of their breaches of fiduciary duty. Plaintiffs also seek equitable relief.

## JURISDICTION AND VENUE

10.      **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3

11.     **Personal Jurisdiction.** This Court has personal jurisdiction over all Defendants because they are all residents of the United States and ERISA provides for nation-wide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

12.     **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because it was where the Plan is administered and some or all of the fiduciary breaches for which relief is sought occurred.

## PARTIES

**Plaintiffs**

13.     Plaintiff Jeffery Schweitzer is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares of ConocoPhillips stock in his Plan account during the Class Period. He is a resident of Montana.

14.     Plaintiff Jonathan Sapp is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares of ConocoPhillips stock in his Plan account during the Class Period. He is a resident of Montana.

15.     Plaintiff Raul Ramos is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares of ConocoPhillips stock in his Plan account during the Class Period. He is a resident of California.

16.     During the Class Period, the value of the ConocoPhillips Funds held in Plaintiffs' accounts diminished considerably and Plaintiffs, like thousands of other Plan participants, suffered losses resulting from Defendants' breaches of fiduciary duty.

**Defendants**

17.     The Investment Committee is an unincorporated association with a principal place of business in Houston, Texas. At all relevant times, the Investment Committee administered the Plan and was a fiduciary of the Plan. *See* Plan's 2016 Financial Statements at p. 8.

18.     The Investment Committee is also a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or control over management of the Plan, exercised authority or control over the management or disposition of Plan assets and/or had discretionary authority to appoint and monitor Plan fiduciaries who had authority or control over management or disposition of Plan assets.

19.     Defendant Sam Farace is an individual who, upon information and belief, is a resident of Texas. At all times since July 2015, Farace has been the Plan Financial Administrator and a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he "is responsible for controlling and managing the assets of the [P]lan." *See* Plan's Summary Plan Description (SPD) at p. 36.

20.     John Does 1 through 10, inclusive, are the other individual members of the Investment Committee, and any other committee(s) responsible for carrying out the provisions of the Plan or who served as Plan Financial Administrator during the Class Period. Their names and identities are currently not known. Upon information and belief, John Does 1 through 10 are senior executive officers of Phillips 66 who knew or should have known the facts alleged herein.

## DESCRIPTION OF THE PLAN

21.     The Plan is an employee benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

22.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) because it provides individual accounts for each participant and benefits based upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which could be allocated to such participants' accounts.

23.     Phillips 66 Company, Inc. ("Phillips 66") was incorporated in Delaware in 2011 as a wholly owned subsidiary of ConocoPhillips.

24.     On April 30, 2012, ConocoPhillips transferred what it called its "downstream businesses," including its refining, marketing and transportation operations, to Phillips 66, which spun-off from ConocoPhillips and became a separate, independent company. Each ConocoPhillips stockholder received one share of Phillips 66 stock for every two shares of ConocoPhillips stock held as of April 16, 2012. Phillips 66 and ConocoPhillips referred to the transactions that effectuated the spin-off as the "Separation." *See*, *e.g.*, ConocoPhillips 2013 10-K at p. 30.

25.     As a result of the Separation, approximately 12,000 employees of ConocoPhillips became employees of Phillips 66.

26.     Phillips 66 established the Plan on May 1, 2012 as part of the Separation. *See* Plan's 2012 Financial Statements at p. 4. The Plan is for employees of Phillips 66 and Phillips 66 Pipeline, LLC. *See* SPD at 5. ConocoPhillips' employees are not eligible to participate in the Plan. *Id*.

27.     The purpose of the Plan is to help its participants save for retirement. *See* SPD at p. 3.

28.     On May 1, 2012, the assets and liabilities related to the Phillips 66 employees who were formerly participants in the ConocoPhillips Savings Plan ("CP Plan") were transferred to the Plan. The CP Plan transferred approximately $2.9 billion in assets to the Plan. Of the $2.9 billion, approximately $740 million was invested in the ConocoPhillips Stock Fund and approximately $271 million was invested in the ConocoPhillips Leveraged Stock Fund. The ConocoPhillips Funds both invest exclusively in ConocoPhillips stock. *See* SPD at p. 38.

29.     At all times since June 1, 2013, the Investment Committee has been responsible for selecting the Plan's investment options.

30.     Phillips 66's board of directors appoints members of the Investment Committee. *See* Plan's 2016 Financial Statements at p. 8.

31.     The Plan Financial Administrator, Farace, is responsible for "controlling and managing the assets of the Plan."  *See* SPD at p. 36.

## SUBSTANTIVE ALLEGATIONS

**A.     Defendants breached ERISA's duty of prudence by allowing the Plan to invest a significant portion of its assets in the ConocoPhillips Funds.**

32.     ERISA imposes strict fiduciary duties on fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

33.    In addition to the duty to prudently select investments, a fiduciary has "a continuing duty of some kind to monitor investments and remove imprudent ones" and "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015).

34.    Defendants should have been particularly vigilant in monitoring the ConocoPhillips Funds because they are single-stock funds comprised entirely of ConocoPhillips stock, which is a volatile investment subject to large price swings.

35.    At the time of the Separation, the Plan had more than $1.1 billion, or nearly ***35%*** of its assets, invested in ConocoPhillips stock. By comparison, a mutual fund is "concentrated" if 25% of its assets are invested in one ***industry*** because investments at greater percentages "could expose investors to additional risks." *See* Investment Company Release No. 23064, 63 Fed. Reg. 13,916 at 13,927 (Mar. 23, 1998).

36.    The Plan continued to have more than 25% of its assets invested in the ConocoPhillips Funds through the end of 2014. See, 2014 Phillips 66 Retirement Plan Financial Statements and Supplemental Schedules. By comparison, according to Morningstar.com, out of all mutual funds offered in the world, the one with the highest concentration of ConocoPhillips stock, the Putnam Global Energy Fund, holds only 8.78% of ConocoPhillips stock. The largest diversified mutual fund, Vanguard's Total Stock Market Index, invests less than 0.4% of its assets in ConocoPhillips stock.[1] Owning three times the concentration of ConocoPhillips stock as the most concentrated mutual fund in the world was plainly imprudent for the investment of retirement assets.

---

[1] Vanguard Total Stock Market Index Annual Report for year ending 12/31/2016, obtained on Morningstar.com, shows the top 50 investments, including some as small as 0.4% of assets, but ConocoPhillips is not identified. By comparison, Vanguard's large-cap diversified index fund (VINIX) only invests 0.32% of its assets in ConocoPhillips.

37.     In contrast to the 401(k) Plan, in which the risk of loss is borne by the employees and retirees of Phillips 66, the risk of loss in a pension plan is borne by the company. The Phillips 66 pension plan, called the Retirement Plan, invested only 0.4% of its assets in ConocoPhillips stock, whether measured as of the end of 2012, 2013, 2014 or 2015. *See* Phillips 66 Retirement Plan Financial Statements and Supplemental Schedules.

38.     The 401(k) Plan's massive, concentrated holding in ConocoPhillips stock was greater than its investments in all of the Plan's mutual fund investment options ***combined*** at the end of 2013. *See* Plan's 2013 Financial Statements at p. 11. This heavy, overly concentrated position should have been a red flag to the Defendants that they needed to diversify the Plan's assets in order to avoid the risk of large losses and ensure the Plan's assets were invested prudently. Defendants, however, failed to independently assess the ConocoPhillips Funds to ensure they were prudent and failed to continually monitor these investments' inclusion in the Plan.

39.     Moreover, there was significant correlation between the Plan's two largest investments, Phillips 66 and ConocoPhillips.   By November 20, 2014, the correlation rose to above 75% on a 60-day rolling average.   *See* https://www.portfoliovisualizer.com/asset-correlations. A prudent fiduciary considering the prudent diversification of the Plan as a whole would have removed ConocoPhillips stock in light of the high correlation to the Plan's employer-security and largest investment, Phillips 66. Thus, including ConocoPhillips stock as an investment plan only further concentrated the Plan's exposure to the petroleum industry instead of diversifying the Plan's investments as required by ERISA.

40.     Additionally, ConocoPhillips on its own was riskier than other Plan investment options due to its over-concentration in oil and gas exploration. From July 1, 2013 to September

30, 2017, the Annualized Standard Deviation of ConocoPhillips stock was 27.77%, compared to 19.36% for Phillips 66 stock and 9.89% for the S&P 500.[2] Defendants failed to regularly assess whether ConocoPhillips was a prudent investment for retirement assets.

41.     While a single-stock fund, particularly in a volatile industry like energy, is always risky, there should have been heightened cause for concern because ConocoPhillips had changed the nature of its business after the Separation and become heavily dependent on the price of oil.

42.     Before the Separation, when it had its "downstream businesses," ConocoPhillips could mitigate the effects of low oil prices through its refinery operations because refineries earn a greater margin on the products they sell (*e.g.*, gasoline) when the price of oil falls. *See, e.g.*, http://www.marketwatch.com/story/forget-crude-itself-refiners-are-the-place-to-make-money-2015-07-27.

43.     After the Separation, ConocoPhillips became an exploration and production ("E&P") company. *See* ConocoPhillips 2013 10-K at p. 1 ("We explore for, produce, transport and market crude oil, bitumen, natural gas, liquefied natural gas (LNG) and natural gas liquids on a worldwide basis."). Accordingly, ConocoPhillips' "revenues, operating results and future rate of growth are highly dependent on the prices we receive for our crude oil, bitumen, natural gas, natural gas liquids and (liquid natural gas)." *See* ConocoPhillips 2013 10-K at p. 27. For example, ConocoPhillips reported in 2013 that a $1 change in the price of a barrel of oil can have as much as a $90 million impact on its annual net income. ConocoPhillips' success as a company was "live by the oil price, die by the oil price" after the Separation. *See*, https://www.fool.com/investing/general/2014/10/06/why-conocophillips-stock-plunged-13-from-its-2014.aspx.

---

[2] Represented by The Vanguard Institutional Index Fund, VINIX, whose largest holdings are Apple Inc. (4.03% of the Fund), Microsoft Corp. (2.72% of the Fund), Facebook (1.92% of the Fund) and Amazon.com (1.84% of the Fund.).

44.     The price of crude oil is volatile and swings widely in times of shortage or oversupply. *See* http://www.wtrg.com/prices.htm. These price cycles can take several years to stabilize in response to changes in demand. *Id*.

45.     ConocoPhillips remained an investment option for the Plan's participants because Defendants did not follow an appropriate process in evaluating the prudence of the ConocoPhillips Funds. Defendants did not perform an independent review, as they were required to do, and their failures cost the Plan participants millions of dollars.

46.     For example, on August 8, 2014, "[t]o provide participants with a portfolio consisting of diversified, relatively low-cost and high-quality investment options…," Defendants replaced the Plan's target-date funds with collective trusts, closed twelve funds and transferred the assets that were invested in those funds to new or existing mutual funds, closed four other funds to offer lower-cost share classes to participants and added three new mutual funds. *See* Plan's 2014 Financial Statements at pp. 10-11. Defendants, however, took no action concerning the ConocoPhillips Funds.

47.     Defendants did not independently assess whether to keep the ConocoPhillips Funds as investment options because they incorrectly believed that ConocoPhillips stock was a "qualifying employer security" for the Plan. ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2), provides that ERISA's duties of prudence and diversification are not violated "by acquisition or holding of…qualifying employer securities."

48.     For example, in 2014 and 2015, Defendants represented that ConocoPhillips stock was a "qualifying employer security" for the Plan. *See* Plan's 2014 and 2015 5500s at Schedule H at Part I(1)(d)(1). Defendants' classification of ConocoPhillips stock as an employer security is contrary to both ERISA's plain language and private letter rulings from the IRS that hold that

after a corporate spin-off, the previous employer's stock is no longer a "qualifying employer security" for a new employee benefit plan like the Plan. *See*, *e.g.*, P.L.R. 2014-27-024 at 15.

49.     At no time was ConocoPhillips stock a "qualifying employer security" with respect to the Plan.

50.     ERISA § 3(5), 29 U.S.C. § 1002(5) defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan."

51.     ERISA § 407(d)(1), 29 U.S.C. 1107(d)(1), defines "employer security" as a "security issued by an employer of employees covered by the plan, or by an affiliate of such employer." Under ERISA, a "qualifying employer security" is an "employer security" that is either a stock, a marketable obligation (e.g., a bond) or an interest in a publicly traded partnership. *See* ERISA § 407(d)(5), 29 U.S.C. § 1107(d)(5).

52.     Phillips 66 and ConocoPhillips have been independent companies since they separated in 2012. *See*, *e.g.*, Phillips 66's 2014 10-K at p. 1.

53.     ConocoPhillips' employees are not eligible to participate in the Plan. ConocoPhillips has not paid participants' wages, made contributions to the Plan or otherwise acted in Phillips 66's interests concerning the Plan since the Plan was established. *See* SPD at p. 5 ("You're eligible if you're an active employee on the U.S. payroll of…" Phillips 66 or Phillips 66 Pipeline, LLC). Accordingly, ConocoPhillips is not an "employer" for the Plan.

54.     ConocoPhillips was also not an "affiliate" of Phillips 66 after the Separation. Under ERISA § 407(d)(7), 29 U.S.C. § 1107(d)(7), a corporation is an "affiliate" of an employer if it is a member of a "controlled group of corporations," a term defined as when a parent corporation owns stock possessing at least 50% of the subsidiary's voting power or when five or

fewer individuals, estates or trusts own stock possessing at least 50% of each corporation's voting power. *Id.*, citing 26 U.S.C. § 1563. After the Separation, ConocoPhillips and Phillips 66 were both independent, publicly traded companies. Accordingly, the companies have not been "affiliates" since the spin-off.

55.     As ConocoPhillips was not an "employer" or an "affiliate" for the Plan after the Separation, ConocoPhillips stock was not a "qualifying employer security."  Accordingly, Defendants were subject to ERISA's fiduciary duties, including the duties of prudence and diversification, concerning the ConocoPhillips Funds.

56.     Defendants kept the ConocoPhillips Funds as legacy funds from the CP Plan, but not because they thought ConocoPhillips was a prudent investment for a retirement plan. If the Defendants had performed a proper investigation and fulfilled their duty of prudence under ERISA, they would have realized that the ConocoPhillips Funds were not suitable options for the investment of retirement assets, particularly at the levels at which the Plan was invested at the end of 2014.

57.     The price of ConocoPhillips stock initially shielded the Plan from the Defendants' failure to assess the appropriateness of the ConocoPhillips Funds. The price of ConocoPhillips stock rose from $73 at the end of 2013 to $86 a share by the end of June 2014, following the price of crude oil during the same period. Defendants, however, had a continuing duty to assess the appropriateness of the Plan's offering of the ConocoPhillips Funds and remove them under *Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015).

58.     In addition to the Plan's concentrated position in the ConocoPhillips Funds, there were numerous other red flags that the Defendants should have seen in the second half of 2014 to indicate that the Plan should no longer invest in ConocoPhillips stock. The price of

ConocoPhillips stock dropped from $86 to $76 a share between July 1 and October 1, 2014. Defendants, however, did not take action or otherwise remove the ConocoPhillips Funds as investment options.

59.     The price of oil began to steadily decline beginning in July 2014, dropping from $108.37 a barrel to $95.85 a barrel by September 30, 2014. This decline was consistent with ConocoPhillips' forecasts from July 2014 which indicated that the price of oil would drop in the second half of 2014 and fall even further in the years to come.

60.     A prudent fiduciary would have included ConocoPhillips as part of any review and removed the Funds from the Plan if it had not already done so.

61.     Market news and information in the fall of 2014 further showed that energy prices would remain low in the future — warning signs that the Defendants should have recognized would increase the risk of a continued investment in the ConocoPhillips Funds. In November 2014, OPEC announced it would maintain its crude oil production target of 30 million barrels a day. The U.S. Energy Information Administration (USEIA) predicted that this supply would outpace consumption, leading to an increase in stored oil, and lower prices. *See* http://www.eia.gov/forecasts/steo/archives/dec14.pdf at p. 3.

62.     On December 9, 2014, the USEIA released its "Short Term Energy Outlook" that provided that there was going to be high uncertainty in the price of oil and that Brent crude oil prices (Brent) would only average $68 per barrel in 2015 and West Texas Intermediate crude oil (WTI) would only average $63 per barrel. *See* http://www.eia.gov/outlooks/steo/archives/ dec14.pdf. These prices were significantly lower than the $112 per barrel and $105 per barrel that Brent and WTI sold for respectively in June 2014. *See* http://www.eia.gov/todayinenergy/ detail.php?id=19451.

14

63.     Defendants also should have evaluated ConocoPhillips' declining stock price in conjunction with how the company had changed in 2012 when it became more heavily focused on oil exploration and production. A December 10, 2014 article on Time.com stated that Berkshire Hathaway was selling its stake in ConocoPhillips stock because of its poor performance and because "Buffett invested in a fully integrated major oil company, while the spinoff turned it into an exploration and production company… It's no longer the company he bought." *See* http://time.com/money/3628370/warren-buffett-conocophillips.

64.      Defendants ignored these risks and failed to take any action that a prudent fiduciary would have taken to stop these losses, and the risk of future large loss, that Plan participants were or could be suffering. Defendants did not remove the ConocoPhillips Funds as Plan investments or otherwise act to save the Plan from losing millions of dollars in hard-earned retirement savings.

65.     The price of ConocoPhillips stock fell $9 a share between October 1, 2014 and December 31, 2014, ending the year at $68.50 a share, a 20% drop from its price on July 1, 2014. Despite this decline, the Plan ***still*** had massive stakes in ConocoPhillips stock at the end of 2014. The Plan had $928 million invested in the ConocoPhillips Funds, or more than 21% of its assets, at the end of 2014. *See* Plan's 2014 Financial Statements at p. 18.

66.     Defendants should have been particularly aware of how this sharp decline would affect more than $255 million invested in the ConocoPhillips Leveraged Stock Fund at the end of 2014. Because the stock in ConocoPhillips Leveraged Stock Fund was purchased before August 5, 1989 (*see* SPD at p. 38), the Plan's participants invested in that fund were much more likely to be at or near retirement age and even more in need of a diversified portfolio. Defendants took no action with either of the ConocoPhillips Funds.

67.     The price of ConocoPhillips stock, and thus the performance of the ConocoPhillips Funds, took a nose dive in 2015. ConocoPhillips stock dropped from $68.50 a share to $49.80 a share by August 1, 2015 and ended 2015 $46.41 a share. This $22 a share, or 32%, decline in 2015 cost the Plan's participants tens, if not hundreds, of millions of dollars in retirement savings.

68.     Even with this massive decline in the price of ConocoPhillips stock and the high correlation to Phillips 66 stock, Defendants still took no action to mitigate the Plan's risks or losses or to protect participants from the staggering amount of retirement savings they were losing. Whereas the S&P 500 *gained* 13.69% in 2014 and 1.38% in 2015, the price of ConocoPhillips stock *declined* by 2.5% in 2014 and 32% in 2015.

69.     In addition to ConocoPhillips' falling stock price and high correlation to Phillips 66 stock, publicly available information showed the riskiness of ConocoPhillips stock, particularly for the investment of retirement assets. In January 2015, ConocoPhillips announced that its earnings for the fourth quarter of 2014 were significantly lower than in 2013. *See* ConocoPhillips News Released dated January 29, 2015. On January 29, 2015, ConocoPhillips' CEO stated the company had a "weak price outlook in 2015." https://www.nytimes.com/2015/01/30/business/2-oil-giants-post-losses-reflecting-price-plunge.html.

70.     Analysts stated that there was "little prospect that oil prices will rebound (in 2015) to anywhere close to the $100 a barrel executives have been accustomed to in recent years" and that the companies that were "spared, at least partly, are those that have different sources of income like refineries…"  *Id*. ConocoPhillips, however, had no other sources of income, as it spun them off in the Separation and in other transactions that closed in late 2013.

*See* ConocoPhillips 2013 10-K at p. 1. ConocoPhillips, and the Plan's participants, were thus "living by the oil price and dying by the oil price."

71.     On August 20, 2015, Moody's downgraded ConocoPhillips' debt to A2 from A1 because of "Moody's expectation that COP's financial leverage will remain high through 2017, with the company increasing its debt levels to fund negative free cash flow." https://www.moodys.com/research/Moodys-downgrades-ConocoPhillips-unsecured-ratings-to-A2-stable-outlook--PR_332842.

72.     On September 1, 2015, ConocoPhillips announced it was planning to lay off 1,800 employees, or 10% of its workforce, "as it copes with low oil prices." http://fuelfix.com/blog/2015/09/01/conocophillips-to-cut-10-percent-of-global-workforce.

73.     Financial analysts predicted that the dramatic fall in oil prices would negatively affect the price of natural gas, another part of ConocoPhillips' business. In December 2015, the price of natural gas fell to its lowest level since 2012, a decline that was called "just the beginning." *See* http://blogs.ft.com/nick-butler/2015/01/04/after-the-oil-price-fall-is-natural-gas-next. Unlike oil, the fall in natural gas prices was not due to any production decisions from OPEC or political instability that might be considered short term. Rather, the falling prices were "simply a matter of supply and demand" and the fact that supply was "strong – driven by high prices in the last few years and the US shale revolution." *Id*. Simply put, there was too much natural gas being produced to maintain the price levels from prior years.

74.     In 2015, ConocoPhillips had a "drastic fall in its earnings and margins." And by February 2016, the price of its stock dropped to less than $40 a share, half of what it was in June 2014. *See* https://www.forbes.com/sites/greatspeculations/2016/02/09/conocophillips-reports-

severe-losses-on-depressed-prices-cuts-dividends-and-capital-spending/#4e9138f0473f.

ConocoPhillips slashed dividends and had "a weak outlook going forward." *Id.*

75.     The ConocoPhillips Funds continued to be an imprudent, single-stock investment in 2016 that were not appropriate for retirement assets in general and the Plan in particular. While the price of ConocoPhillips experienced modest gains in 2016, it continued to be highly correlated with Phillips 66 stock, continued to represent an enormous percentage of the plan participants' retirement nest-eggs, and continued to underperform the S&P 500 as a whole. The small gains in the price of ConocoPhillips stock were disproportionate to the risks the Plan bore by continuing to invest in the ConocoPhillips Funds.

76.     The current price of ConocoPhillips stock is $50 a share, a 27% decline from January 1, 2015 and a 42% decline from July 1, 2014. Defendants' failure to remove the ConocoPhillips Funds as Plan investment options has cost the Plan's participants tens, if not hundreds, of millions of dollars.

**B.      Defendants Violated Their Duty to Diversify the Plan's Investments.**

77.     ERISA requires prudent fiduciaries to diversify the plan's investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." *See* ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C). ERISA's legislative history indicates that a fiduciary should not invest an "unreasonably large percentage" of plan assets in a "single security," in "one type of security," or in "various types of securities that are dependent upon success of one enterprise or upon conditions in one locality." *See* ERISA Conference Report on H.R. 2, H.R. Rep. No. 1280, 93d Cong., 2d Sess. 300, 304 (Aug. 12, 1974).

78.     Because the value of any single stock is tied to the fortunes of one company, holding a single stock is unduly risky. By contrast, investors who hold a diverse portfolio of

stocks and bonds face less risk because they have only a small stake in each company. *See* N.

Gregory Mankiw, Principles of Economics 546 (1998); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d

410, 415 (4th Cir. 2007); *Steinman v. Hicks*, 352 F.3d 1101, 1104 (7th Cir. 2003).

79.     Defendants acknowledged this investment principle. The SPD states:

> As the saying goes, "don't put all your eggs in one basket." This is
> especially true when investing for retirement. Maintaining a mix of stocks,
> bonds and short-term investments can help manager your investment
> risk….This "diversification" is a key principle of sound investing.

*See* SPD at p. 17. Defendants advised Plan participants: "If you invest more than 20% of your

retirement savings in any one company or industry, your savings may not be properly

diversified…" *Id*.

80.     Defendants, however, did ***not*** diversify the Plan's assets. At the beginning of the

Class Period, the Plan had approximately 25% of its assets in the ConocoPhillips Funds. This

level of concentration in even ***one industry*** is excessive. For a retirement plan like the Plan, it is

far too concentrated and exposed the Plan to the large losses suffered during the Class Period.

81.     The Plan continued to hold an excessive amount of assets in the ConocoPhillips

Funds. At the end of 2013, more than 25% of the Plan's assets were still invested in those Funds.

As of December 31, 2014, even with the price of ConocoPhillips stock having fallen to $68.50 a

share, the Plan still held $928,410 million in ConocoPhillips stock. *See* Plan's 2014 Financial

Statements at p. 18. The Plan's holdings of ConocoPhillips stock represented more than ***21%*** of

the Plan's assets and was greater than the investments in ***all*** of the Plan's domestic stock funds

***combined***. Here, not only was the Plan's investment over-concentrated in one industry, it was

over-concentrated in ***one company*** whose share price was volatile and free-falling.

82.     Given the Plan's excessive holding in the ConocoPhillips Funds, its enormous

investment in Phillips 66 stock, which was positively correlated with ConocoPhillips, and the

19

acknowledged risks of failing to diversify, a prudent fiduciary would have sold the ConocoPhillips stock to properly diversify the Plan's assets and not allow Plan participants' retirement savings to "live by the price of oil, die by the price of oil."

83.     Defendants, however, did nothing to diversify the Plan's assets. Even with the price of ConocoPhillips stock having declined by 32% and participants' investments in other funds and the appreciation of those other funds, the Plan still had more than $500 million invested in ConocoPhillips Funds at the end of 2015, or more than 12% of the Plan's assets, in ConocoPhillips stock. *See* Plan's 2015 Financial Statements at pp. 14-15.

84.     At the end of 2016, the Plan still had more than $504 million, or nearly 11% of its assets, invested in ConocoPhillips stock. *See* Plan's 2016 Financial Statements at p. 13.

## DEFENDANTS WERE FIDUCARIES

85.     ERISA requires that every plan name one or more fiduciaries who have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

86.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who perform fiduciary functions for a retirement plan. A person or entity is considered a fiduciary to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

87.     Each of the Defendants was a fiduciary during the Class Period within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) as either a named or a *de facto*

fiduciary with respect to the Plan, and each owed fiduciary duties to the Plan and its participants under ERISA.

88.     The Investment Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or control over management of the Plan. *See*, *e.g.*, SPD at Summary of Material Modifications from January 1, 2014 ("The Investment Committee has responsibility for the Savings Plan investments.").

89.     Defendant Sam Farace has been a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because he has been the Plan Financial Administrator and, as such, "is responsible for controlling and managing the assets of the [P]lan." *See* Plan's Summary Plan Description (SPD) at p. 36.

## CLASS-ACTION ALLEGATIONS

90.     Plaintiffs bring this action derivatively on the Plan's behalf pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132, and as a class action pursuant to Rules 23(a), (b)(1), and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of the Plan, Plaintiffs, and the following class of similarly situated persons (the "Class"):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Phillips 66 Savings Plan at any time from May 1, 2012 to the date of judgment in this Action, inclusive (the "Class Period"), and whose Plan accounts included investments in the ConocoPhillips Stock Fund or the ConocoPhillips Leveraged Stock Fund.

91.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, the Plan had over 12,000 participants when it was established in 2012 and, according to the Plan's public filings, the Plan had 12,571 participants at the end of 2015.   Accordingly, Plaintiff believes there are thousands of Plan

participants whose Plan accounts included investments in the ConocoPhillips Funds during the Class Period.

92.     Multiple questions of law and fact common to the Class exist, including:

a.     whether Defendants each owed a fiduciary duty to the Plan, Plaintiffs, and members of the Class;

b.     whether Defendants breached their fiduciary duties to the Plan, Plaintiffs, and members of the Class by failing to act prudently and solely in the interests of the Plan and the Plan's participants and beneficiaries;

c.     whether Defendants violated ERISA; and

d.     whether the Plan, Plaintiffs, and members of the Class have sustained damages and, if so, what is the proper measure of damages.

93.     Plaintiffs' claims are typical of the claims of the members of the Class because the Plan, Plaintiffs, and the other members of the Class each sustained damages arising out of Defendants' uniform wrongful conduct in violation of ERISA as complained of herein.

94.     Plaintiffs will fairly and adequately protect the interests of the Plan and members of the Class because they have no interests antagonistic to or in conflict with those of the Plan or the Class. In addition, Plaintiffs have retained counsel skilled and experienced in class-action litigation, complex litigation, and ERISA litigation.

95.     Class-action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter,

be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

96.     Class-action status is also warranted under Rule 23(b)(1)(A) and (b)(2) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; and (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty)

97.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

98.     During the Class Period, the Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.

99.     Defendants breached their fiduciary duties by wrongfully allowing the Plan to hold massive amounts of ConocoPhillips stock in the ConocoPhillips Funds

100.    The scope of the Defendants' fiduciary duties and responsibilities included managing the assets of the Plan for the sole and exclusive benefit of participants and beneficiaries and with the care, skill, diligence, and prudence required by ERISA. Defendants were responsible for, among other things, selecting and offering only prudent investment options, eliminating imprudent options, evaluating the merits of the Plan's investments on an ongoing basis, administering the operations of the Plan and taking all necessary steps to ensure that the Plan's assets were invested prudently.

101.    According to the United States Department of Labor ("DOL") regulations and cases interpreting this statutory provision, a fiduciary's investment or investment course of action is prudent if he has: (a) given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, and (b) acted accordingly.

102.    Defendants had a duty to follow a regular, appropriate systematic procedure to evaluate the ConocoPhillips Funds as investments in the Plan. They breached that duty and failed to conduct an appropriate investigation of continued investment in the ConocoPhillips Funds.

103.    Defendants failed to act prudently when they continued to offer the ConocoPhillips Funds as Plan investment options because, among other reasons:

> (a)     they knew or failed to understand that ConocoPhillips stock was not a qualifying employer security;
>
> (b)     they knew of and/or failed to investigate ConocoPhillips; and
>
> (c)     the risk associated with the investment in the ConocoPhillips Funds during the Class Period was by far above and beyond the normal, acceptable risk for retirement plan investments.

104.    Knowing these extraordinary risks, the Defendants had a duty to remove the ConocoPhillips Funds as investment options for the Plan's participants and restrict the Plan or any participant from continuing to invest in ConocoPhillips stock.

105.    Defendants also breached their fiduciary duties by failing to diversify Plan investments. Defendants were bound by the duty to diversify the Plan's investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." *See* ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C). Defendants acknowledged the importance of diversification but did not diversify the Plan's assets. *See* SPD at 17.

106.    The Plan had more than 25% of its assets invested in the ConocoPhillips Funds during the Class Period and, even with the substantial decline in the price of ConocoPhillips stock in the second half of 2014, the Plan still had more than a 20% concentration in ConocoPhillips, which was greater than the ***total*** of the Plan's investments in all "Domestic Stock" mutual funds that were offered as Plan investments in 2014.

107.    Despite the power and ability to do so, Defendants took no actions to diversify the Plan's assets and end the Plan's investments in the ConocoPhillips Funds. Defendants' failure to properly diversify the Plan's assets caused the Plan to suffer tens of millions of dollars in losses during the Class Period.

108.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## SECOND CAUSE OF ACTION
### (Co-Fiduciary Liability)

109.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

110.    ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

111.    ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by the other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. As

alleged above, each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable effort, to remedy those breaches.

112.    The Committee and its individual members were "responsible for the Savings Plan investments" and Farace, as the Plan Financial Administrator, was "responsible for controlling and managing the assets of the [P]lan."

113.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Defendants knowingly participated in each other's breaches because, as alleged above, they participated in the management of the Plan's improper investment in the ConocoPhillips Funds and, upon information and belief, knowingly participated in the improper management of those investments by the other Defendants.

114.    ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

115.    As a direct and proximate result of these breaches of fiduciary duties, the Plan, and indirectly Plaintiffs and other participants and beneficiaries, lost millions of dollars of retirement savings.

116.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), each of the Defendants is liable to restore the losses to the Plan caused by his or her breaches of the fiduciary duties and to provide other equitable relief as appropriate.

**CAUSATION**

117.    The Plan suffered millions of dollars in losses because Plan assets were imprudently invested in the stock of one company, ConocoPhillips, through the ConocoPhillips Funds, in breach of the Defendants' fiduciary duties.

118.    Had the Defendants properly discharged their fiduciary duties and/or their co-fiduciary duties, the Plan and its participants would have avoided a substantial portion of the losses suffered through the Plan's continued investment in the ConocoPhillips Funds. The Plan should have divested itself of the ConocoPhillips Funds during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for:

A.      A Declaration that the Defendants have breached their ERISA fiduciary duties to the participants;

B.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from their breaches of their fiduciary duties, including loss of vested benefits to the Plan resulting from imprudent investment of the Plan's assets; to restore to the Plan all profits Defendants made through use of the Plan's assets; and to restore to the Plan all profits which the Plan and participants would have made if Defendants had fulfilled their fiduciary obligations;

C.      An Order enjoining each of the Defendants from any further violations of their ERISA fiduciary obligations;

D.      An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investments;

E.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

F.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.      An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law; and

H.      An Order for equitable restitution and other appropriate equitable and injunctive relief against all Defendants.


DATED:  October 9, 2017                    Respectfully submitted,


                                           By:  /s/ Thomas R. Ajamie
                                           Thomas R. Ajamie
                                           Texas Bar No. 00952400
                                           John S. Edwards, Jr.
                                           Texas Bar No. 24040851
                                           **AJAMIE LLP**
                                           Pennzoil Place - South Tower
                                           711 Louisiana, Suite 2150
                                           Houston, Texas 77002
                                           Tel:  (713) 860-1600
                                           Fax:  (713) 860-1699
                                           E-mail:  tajamie@ajamie.com
                                           E-mail:  jedwards@ajamie.com


                                           **IZARD KINDALL & RAABE LLP**
                                           Robert A. Izard
                                           Mark P. Kindall
                                           Douglas P. Needham
                                           29 South Main Street, Suite 305
                                           West Hartford, CT 06107
                                           Tel: (860) 493-6292
                                           Fax: (860) 493-6290
                                           E-mail: rizard@ikrlaw.com
                                           E-mail: mkindall@ikrlaw.com
                                           E-mail: dneedham@ikrlaw.com

**BAILEY & GLASSER LLP**
Gregory Y. Porter
Ryan T. Jenny
Mark G. Boyko
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
E-mail: gporter@baileyglasser.com
E-mail: rjenny@baileyglasser.com
E-mail: mboyko@baileyglasser.com

**Attorneys for Plaintiffs**