IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFERY SCHWEITZER, JONATHAN SAPP, RAUL RAMOS, and DONALD FOWLER, on behalf of the Phillips 66 Savings Plan and a class of all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-17-3013 |
| v. | § § | |
| THE INVESTMENT COMMITTEE OF THE PHILLIPS 66 SAVINGS PLAN, SAM FARACE, and JOHN DOES 1-10, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Jeffery Schweitzer, Jonathan Sapp, Raul Ramos, and Donald Fowler, bring this action pursuant to Sections 404, 405, 409, and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1109, and 1132, on behalf of the Phillips 66 Savings Plan (the "Plan" or the "Phillips 66 Plan") and a class of similarly situated participants in the Plan whose retirement assets were invested in the "ConocoPhillips Stock Fund" and the "ConocoPhillips Leveraged Stock Fund" (together, the "ConocoPhillips Funds") through the Plan during the period from May 2, 2012, to the date of judgment in this action (the "Class Period")[1] against defendants, the Investment Committee of the

---

[1] Class-Action Complaint ("Complaint"), Docket Entry No. 1, p. 1 ¶ 1. All page number citations are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.

Phillips 66 Savings Plan (the "Committee"), individual members of the Investment Committee, John Does 1 through 10, and Sam Farace, the Plan's Financial Administrator (collectively "Defendants"). Pending before the court is Defendants the Investment Committee of the Phillips 66 Savings Plan and Sam Farace's Motion to Dismiss Plaintiffs' Class Action Complaint with Brief in Support ("Defendants' Motion to Dismiss") (Docket Entry No. 15). For the reasons explained below, Defendants' Motion to Dismiss will be granted.

## I.    Factual and Procedural Background[2]

Phillips 66 Company, Inc. ("Phillips 66") was incorporated in Delaware in 2011 as a wholly owned subsidiary of ConocoPhillips Corporation ("ConocoPhillips"). On April 30, 2012, Phillips 66 was spun-off from ConocoPhillips and became a separate, independent company. As a result of the spinoff approximately 12,000 former ConocoPhillips employees became Phillips 66 employees. Phillips 66 established the Plan on May 1, 2012, for Phillips 66 employees in connection with the spinoff. The Plan is an employee benefit plan within the meaning of ERISA Sections 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A). The Plan is a "defined contribution" or "individual account" plan that maintains individual accounts for each participant within the meaning of ERISA Section 3(34), 29

---

[2]See id. ¶¶ 13-89.

U.S.C. § 1002(34).[3]  Participants designate the manner in which amounts allocated to their accounts will be invested in an array of investment funds.  ConocoPhillips employees are not eligible to participate in the Plan.

Assets of Phillips 66 employees who were former ConocoPhillips employees that were held in participant accounts under the ConocoPhillips Savings Plan ("ConocoPhillips Plan") were transferred to the Phillips 66 Plan.  Included among the assets transferred from the ConocoPhillips Plan to the Phillips 66 Plan were shares of ConocoPhillips stock.  The shares were originally contributed by ConocoPhillips to an employee stock ownership plan ("ESOP") and held in the ConocoPhillips Funds of the ConocoPhillips Plan.  After the spinoff the shares became part of the ConocoPhillips Funds in the Phillips 66 Plan.  The ConocoPhillips Funds invested exclusively in ConocoPhillips stock.  The ConocoPhillips Funds were closed to new investments after the

---

[3]A defined contribution plan does not pay any fixed or determinable benefits.  Instead, benefits will vary depending on the amount of plan contributions, the investment success of the plan, and allocations made of benefits forfeited by non-vested participants who terminate their employment.  Thus, the amount of benefits is based, in part, on the earnings generated by the plan. Both defined benefit and defined contribution plans can provide for employee contributions.  The individual accounts for all partici-pating employees reflect each participant's share in the underlying trust assets and are adjusted annually to take into account plan contributions, earnings, and forfeitures.  Defined benefit plans ordinarily do not maintain individual accounts, except to the extent necessary under the Internal Revenue Code to record benefits attributable to voluntary contributions by employees.  SEC Release No. 33-6188, 1980 WL 29482, at *6-7 (Feb. 1, 1980).

spinoff, but participants of the Phillips 66 Plan could "exchange out of the funds at any time."[4]

The Board of Directors of Phillips 66 appointed the Phillips 66 Savings Plan Committee. The Committee is a named fiduciary with respect to the general administration of the Plan having "all powers necessary or desirable to discharge the duties relating to the administration of the Plan as are delegated to it by the Plan and Trust Agreements. . . ."[5] Defendant Sam Farace is the Plan Financial Administrator who "shall be a fiduciary and shall have responsibility to manage and control the assets of the Plan in accordance with the terms of the Plan. . . ."[6]

Plaintiffs allege that Defendants breached their fiduciary duties of diversification and prudence by retaining the ConocoPhillips Funds in the Plan after the spinoff because the ConocoPhillips stock no longer qualified as an "employer security" under ERISA. Defendants move to dismiss Plaintiffs' claims for failure to state a claim under Rule 12(b)(6).[7]

## II. **Standard of Review**

Under Rule 8 of the Federal Rules of Civil Procedure a pleading must contain "a short and plain statement of the claim showing that

---

[4]ConocoPhillips U.S. Employee Transition Guide, Exhibit 8 to Defendants' Motion to Dismiss, Docket Entry No. 15-8, p. 6.

[5]Phillips 66 Savings Plan, Exhibit 9 to Defendants' Motion to Dismiss, Docket Entry No. 15-9, p. 65.

[6]Id.

[7]Defendants' Motion to Dismiss, Docket Entry No. 15.

-4-

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A
Rule 12(b)(6) motion tests the formal sufficiency of the pleadings
and is "appropriate when a defendant attacks the complaint because
it fails to state a legally cognizable claim." <u>Ramming v.
United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied</u> <u>sub</u>
<u>nom.</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002). The court must
accept the factual allegations of the complaint as true, view them
in a light most favorable to the plaintiff, and draw all reasonable
inferences in the plaintiff's favor. <u>Id.</u>

To defeat a motion to dismiss pursuant to Rule 12(b)(6) a
plaintiff must plead "enough facts to state a claim to relief that
is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127
S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct
alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing
<u>Twombly</u>, 127 S. Ct. at 1965). "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted unlawfully." <u>Id.</u>
(quoting <u>Twombly</u>, 127 S. Ct. at 1965). "Where a complaint pleads
facts that are 'merely consistent with' a defendant's liability, it
'stops short of the line between possibility and plausibility of
entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1966).

When considering a motion to dismiss, district courts are
"limited to the complaint, any documents attached to the complaint,

and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010). "Federal courts are required to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), claims based on invalid legal theories, even though they may be otherwise well-pleaded." Flynn v. State Farm Fire and Casualty Insurance Co. (Texas), 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing Neitzke v. Williams, 109 S. Ct. 1827, 1832 (1989)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1964-65) (quotations omitted); see also Exxon Mobil Corp. v. FX Networks, LLC, 39 F. Supp. 3d 868, 870-71 (S.D. Tex. 2014).

Claims asserted under ERISA are subject to the notice pleading standard of Federal Rule of Civil Procedure 8, which "substitute[d] the requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief' for the technical formula, such as 'facts constituting a cause of action,' which typified the preexisting codes." Heimann v. National Elevator Industry Pension Fund, 187 F.3d 493, 509 (5th Cir. 1999), overruled on other grounds, Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003) (quoting Charles A. Wright and Arthur R. Miller, Federal

Practice and Procedure, § 1202 at 68 (2d ed. 1990)). See also Swierkiewicz, 122 S. Ct. at 998 (Rule 8 is a simplified notice pleading standard that applies to all civil actions, with limited exceptions, i.e., those enumerated in Rule 9(b), and requires merely a statement that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.).

### III.  Applicable Law

**A.   ERISA**

ERISA is a statutory scheme enacted by Congress to protect employees' rights to benefits while also encouraging employers to develop employee benefits programs. Martinez v. Schlumberger, Ltd., 338 F.3d 407, 411 (5th Cir. 2003) (citing Edward E. Bintz, Fiduciary Responsibility Under ERISA: Is There Ever a Fiduciary Duty to Disclose?, 54 U. Pitt. L. Rev. 979, 979 (1993)). "ERISA assigns to plan fiduciaries 'a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest.'" Laborers National Pension Fund v. Northern Trust Quantitative Advisors, Inc., 173 F.3d 313, 317 (5th Cir.), cert. denied, 120 S. Ct. 406 (1999) (quoting Mertens v. Hewitt Associates, 113 S. Ct. 2063, 2066 (1993)).

ERISA requires employee benefit plans to be established and maintained pursuant to a written instrument that provides for  one

or more "named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1).

> [T]he term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(2). Persons or entities who are not named as fiduciaries in plan documents but who exercise discretionary authority and control that amounts to actual decision-making power are also plan fiduciaries. 29 U.S.C. § 1002(21)(A). "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'" Pegram v. Herdrick, 120 S. Ct. 2143, 2151 (2000) (citing 29 U.S.C. § 1002(21)(A)(i)-(iii)). "'[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control.'" Bannistor v. Ullman, 287 F.3d 394, 401 (5th Cir. 2002) (quoting Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1459-60 (5th Cir. 1986), cert. denied, 107 S. Ct. 884 (1987)). "[F]iduciary status is to be determined by looking at the actual authority or power demonstrated, as well as the formal title and duties of the party at issue." Landry v. Air Line Pilots Ass'n Intern. AFL-CIO, 901 F.2d 404, 418 (5th Cir.), cert. denied, 111 S. Ct. 244 (1990). The issue of fiduciary status is a mixed

question of law and fact. <u>Reich v. Lancaster</u>, 55 F.3d 1034, 1044 (5th Cir. 1995).

## B. Fiduciary Duties Under ERISA

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

    (A) for the exclusive purpose of:

        (i) providing benefits to participants and their beneficiaries; and

        (ii) defraying reasonable expenses of administering the plan;

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

    (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

    (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1).

## C. Remedies for Breach

ERISA makes fiduciaries liable for breach of their duties and specifies the remedies available against them. <u>Mertens</u>, 113 S. Ct. at 2066 (citing 29 U.S.C. § 1109(a)). ERISA allows any plan participant, beneficiary, or fiduciary to bring a civil action "for

appropriate relief under section 1109." <u>Id.</u> at 2066-67 (quoting 29 U.S.C. § 1132(a)(2)).

## IV. <u>Defendants' Motion to Dismiss</u>

Defendants do not dispute the Committee's status as a fiduciary of the Plan or Sam Farace's status as the Plan Administrator and named fiduciary within the meaning of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A) and § 1102(a)(2). Defendants argue that they are exempt from ERISA's diversification requirement because the ConocoPhillips shares retain their character as employer securities after the spinoff under ERISA Section 407(d)(1)[8] and that Plaintiffs have failed to plead facts to state a claim for breach of the duty of prudence and the duty to diversify.[9]

## A. Employer Security

Under ERISA an eligible individual account plan ("EIAP") as defined in 29 U.S.C. § 1107(d)(3) that invests in "qualifying employer securities" exempts fiduciaries from the duty to diversify. ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2); <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 134 S. Ct. 2459, 2467 (2014). Plaintiffs do not dispute that the Plan is an EIAP. An "employer security" is "a security issued by an employer of employees covered by the plan,

_____

[8]Defendants' Motion to Dismiss, Docket Entry No. 15, pp. 13-18.

[9]<u>Id.</u> at 19-24.

or by an affiliate of such employer." ERISA § 407(d)(1), 29 U.S.C.
§ 1107(d)(1). Plaintiffs allege that the shares of ConocoPhillips
stock no longer qualify as "employer security" after Phillips 66
separated from ConocoPhillips because ConocoPhillips no longer was
the employer of employees covered by the plan or an affiliate of
such employer.[10] See id. No court has addressed whether, after a
spinoff resulting in two independent companies, shares of stock
that were "employer securities" before the spinoff retain that
character after the spinoff.

Defendants argue that because ConocoPhillips was the
"employer" that "issued" the ConocoPhillips shares before the
spinoff, the shares retain their status of "employer securities"
after the spinoff.[11] Defendants cite Manor Care of America, Inc.
v. Property & Casualty Insurance Guaranty Corp., 185 F. App'x 308,
309, 311 (4th Cir. 2006) (per curium) in support of their argument
that under the plain language of the statute, "whether a stock
qualifies as an employer security is evaluated at the time of
issuance."[12] In Manor Care the Fourth Circuit held that to be
eligible for insurance coverage, "a policyholder must have been a
Maryland resident when the policy was issued, not when the claim is
submitted." 185 F. App'x at 311. It reasoned that the phrase

_____

[10]Complaint, Docket Entry No. 1, pp. 12-13 ¶¶ 50-55.

[11]Defendants' Motion to Dismiss, Docket Entry No. 15, p. 13.

[12]Id. at 13-14.

"issued to a resident . . . unmistakably tethers the residency requirement to a particular event, the issuance of the policy." Id. Defendants argue that "[w]hether a security qualifies as an employer security under ERISA is likewise 'tethered' to the time of issuance of the security."[13] Plaintiffs respond that Defendants "ignor[e] that neither ERISA's language nor its history supports [Defendants'] desired outcome."[14]

The statute at issue in Manor Care did not involve ERISA. The meaning of the word "issue" "cannot be determined in isolation, but must be drawn from the context in which it is used." Henrikson v. Guzik, 249 F.3d 395, 398 (5th Cir. 2001) (citations omitted). "It is important to look to the structure and language of the statute as a whole." Id. The decision in Manor Care as to the meaning of "issued" in the context of Maryland insurance law has little relevance in deciding the issue before the court.

Defendants also cite Tatum v. RJR Pension Investment Committee, 761 F.3d 346 (4th Cir. 2014), in support of their interpretation of 29 U.S.C. § 1107(d)(1) because it "illustrates what undoubtedly would have happened had Defendants forced divestment of participant holdings of the ConocoPhillips stock around the time of the spinoff."[15] In Tatum, RJR Nabisco spun off

---

[13]Id. at 14.

[14]Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Response"), Docket Entry No. 38, p. 14.

[15]Defendants' Motion to Dismiss, Docket Entry No. 15, pp. 14-15.

its tobacco business, RJR, from its food business, Nabisco. <u>Tatum</u>, 761 F.3d at 351. After the spinoff RJR forced the divestment of the Nabisco shares held by employees in their 401(k) accounts. <u>Id.</u> at 354. The plaintiff alleged that the plan fiduciaries breached their duties by eliminating Nabisco stock from the plan without conducting a thorough investigation. <u>Id.</u> at 355. The district court determined that "nothing in the law or regulations required that the Nabisco Funds be removed from the Plan." <u>Tatum v. R.J. Reynolds Tobacco Co.</u>, 926 F. Supp. 2d 648, 680 (M.D. North Carolina 2013). The district court held that RJR breached its fiduciary duty of procedural prudence when it "decided to remove and sell Nabisco stock from the Plan without undertaking a proper investigation into the prudence of doing so" but that RJR met its burden of proving that its decision was objectively prudent. <u>Id.</u> at 651. The Fourth Circuit upheld the district court's ruling that RJR breached its duty of procedural prudence but remanded the action to determine whether RJR met its burden of proving that a prudent fiduciary would have made the same decision under the circuit's articulated standard. <u>Tatum</u>, 761 F.3d at 361, 368.

Defendants argue that "[l]ikewise, at the time ConocoPhillips shares were issued to the participants, they were indisputably employer securities under ERISA, and nothing in the law or regulations should be read to require divestment of those shares simply due to a change in the nominal employer of the

participants."[16] Defendants argue that under Plaintiffs' interpre-
tation of "employer security," "ERISA plans would, at a minimum,
feel increased pressure to force participants to divest stock like
the Nabisco stock, due to the fact that fiduciaries would no longer
be exempt from ERISA's diversification requirements with respect to
such holdings."[17] Plaintiffs respond that on remand the district
court in <u>Tatum</u> reviewed extensive evidence and held that RJR
fiduciaries acted prudently when they divested the plan's holdings
in Nabisco stock.[18] <u>Tatum v. R.J. Reynolds Tobacco Company</u>, Civil
Action No. 1:02-00373, 2016 WL 660902 at *23 (M.D. North Carolina,
Feb. 18, 2016). Plaintiffs argue that "[t]his analysis would have
been completely irrelevant if, following the spin-off, Nabisco
stock was still an 'employer security' for the plan at issue."[19]

The issue in <u>Tatum</u> was RJR's lack of investigation before
forcing divestiture of the plan's shares in Nabisco. The Fourth
Circuit did not determine whether the Nabisco shares retained their
status as employer securities after the spinoff. Although
Defendants argue that fiduciaries would "feel increased pressure to
force participants to divest stock like the Nabisco stock," the
teaching of <u>Tatum</u> is that the fiduciaries would merely feel

---

[16]<u>Id.</u> at 15-16.

[17]<u>Id.</u> at 16.

[18]Plaintiffs' Response, Docket Entry No. 38, p. 15.

[19]<u>Id.</u> at 15.

pressure to evaluate the prudence of keeping the legacy stock as an investment option -- just as they would evaluate the prudence of including other investments in a plan.

Plaintiffs argue that Defendants' interpretation of "employer security" to include a prior employer's shares is incorrect because under ERISA an "employer" means "<u>acting</u> directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan."[20]  29 U.S.C. § 1002(5) (emphasis added). Plaintiffs argue that ConocoPhillips stock is not an "employer security" because "the only 'employer of employees covered by the Plan' is Phillips 66.  ConocoPhillips stock was not issued by Phillips 66 or an affiliate of Phillips 66."[21]  The Plan names Phillips 66 as the "employer."[22]  The Plan is an ESOP that "shall consist primarily of Company Stock purchased by the Trustees holding the assets."[23]  The Plan defines "Company Stock" as shares "issued by Phillips 66, which shall constitute 'employer securities.'"[24]  Although Article XXIII of the Plan is titled "Special Provisions for Former Participants in the Retirement

_____

[20]<u>Id.</u> at 10.

[21]Plaintiffs' Response, Docket Entry No. 38, p. 10.

[22]Phillips 66 Savings Plan, Exhibit 9 to Defendants' Motion to Dismiss, Docket Entry No. 15-9, p. 10, Article I definition 30.

[23]<u>Id.</u> at 32, Article VI section 7.

[24]<u>Id.</u> at 9, Article I definition 18.

Savings Plan of ConocoPhillips Company,"[25] it does not state that ConocoPhillips remained an employer, or that its shares were employer securities under the Phillips 66 Plan. The court concludes that the language of the Phillips 66 Plan supports Plaintiffs' argument that shares of ConocoPhillips stock were not employer securities of the Plan after the spinoff. See In re Ford, 590 F. Supp. at 903-04 (determining whether a Plan is an ESOP by reviewing the terms of the Plan).

Plaintiffs also cite the Internal Revenue Code Private Letter Ruling 201427024 ("PLR").[26] Because ConocoPhillips ceased to be the employer of the participants of the Plan after the spinoff, Plaintiffs argue that under the PLR "[ConocoPhillips] shares are not employer securities with respect to [the] Plan." I.R.S. PLR

_____

[25]Id. at 82, Article XXIII.

[26]Plaintiffs' Response, Docket Entry No. 38, p. 12.

PLR 201427024 states:

> [F]ollowing the Spin-Off, Company B ceased to be the employer of the participants covered under Plan X, and Company A ceased to be the employer of the participants covered under Plan Y. In addition, Company A and Company B are no longer affiliated employers within the meaning of section 407(d)(7) of ERISA since Company A and Company B will not be members of the same controlled group of corporations as determined under section 1563(a) of the Code (except substituting 50 percent for 80 percent). Since section 407(d)(1) of ERISA defines "employer security" as a security issued by an employer of employees covered by the plan or by an affiliate of such an employer, following the Spin-Off, Company B shares are not employer securities with respect to Plan X, and Company A shares are not employer securities with respect to Plan Y.

201427024 (July 3, 2014). Defendants respond that the IRS "does not have regulatory or enforcement authority with respect to the relevant provisions of ERISA" and that the PLR evaluated securities under the Internal Revenue Code, not ERISA.[27] Although the IRS's Private Letter Ruling is not binding precedent, it is persuasive because it addresses the precise issue in question -- whether an employer security retains that character after a spinoff.

Finally, Plaintiffs argue that ownership of ConocoPhillips stock does not promote the purpose of ERISA's "employer securities" exemption to "bring about stock ownership by all corporate employees."[28] Defendants respond that their interpretation is supported by ERISA's policies because it encourages employee ownership "without the possibility that employees could be forced to divest of securities merely because of a corporate transaction that later changed the identity of their employer."[29] ESOPs are designed to promote employee ownership of employer stock, and Congress supports ESOPs' use for that purpose. Fifth Third Bancorp, 134 S. Ct. at 2468-70. Companies use ESOPs to encourage employee participants to focus on company performance and share

---

[27]Defendants' Motion to Dismiss, Docket Entry No. 15, pp. 17-18.

[28]Plaintiffs' Response, Docket Entry No. 38, p. 13 (citing Fifth Third Bancorp, 134 S. Ct. at 2469).

[29]Defendants the Investment Committee of the Phillips 66 Savings Plan and Sam Farace's Reply in Support of Their Motion to Dismiss Plaintiffs' Class Action Complaint ("Defendants' Reply"), Docket Entry No. 43, pp. 9-10.

price appreciation since the participants themselves are shareholders. Because Phillips 66 became an independent company following the spinoff, participant ownership of ConocoPhillips stock would not promote the purposes of ESOPs.

Having carefully considered the parties' arguments and authorities the court concludes that shares of ConocoPhillips stock are not employer securities and that Defendants are therefore not exempt from ERISA's diversification requirement with respect to the ConocoPhillips Funds.

## B. Duty to Diversify

Fiduciaries must "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). "As a general proposition, ERISA's duty to diversify prohibits a fiduciary from investing disproportionately in a particular investment or enterprise." In re Unisys Savings Plan Litigation, 74 F.3d 420, 438 (3d Cir. 1996). As the Fifth Circuit has explained:

> The degree of investment concentration that would violate this requirement to diversify cannot be stated as a fixed percentage, because a fiduciary must consider the facts and circumstances of each case. The factors to be considered include (1) the purposes of the plan; (2) the amount of the plan assets; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds or shares of stock or otherwise; (5) distribution as to geographical location; (6) distribution as to industries; (7) the dates of maturity.

Metzler v. Graham, 112 F.3d 207, 209 (5th Cir. 1997) (quoting H.R. Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in 1974

-18-

U.S.C.C.A.N. 5038, 5084-85 (Conf. Rpt. at 304)). The court also noted that "[w]e think it is entirely appropriate for a fiduciary to consider the time horizon over which the plan will be required to pay out benefits in evaluating the risk of large loss from an investment strategy." Id. at 210 n.6. "To establish a violation, a plaintiff must demonstrate that the portfolio is not diversified 'on its face.'" Id. at 209. Once Plaintiff establishes that a plan is not diversified on its face, "the burden shift[s] to the defendant to show why under the circumstances it was prudent not to diversify the investments of the plan." In re Dell, Inc. ERISA Litigation, 563 F. Supp. 2d 681, 690 (W.D. Tex. 2008) (citing Metzler, 112 F.3d at 209).

Plaintiffs allege that Defendants breached their duty to diversify "by failing to diversify Plan investments"[30] because the Plan had more than 25% of its assets invested in the ConocoPhillips Funds at the beginning of the Class Period and "continued to hold an excessive amount of assets in the ConocoPhillips Funds."[31] Plaintiffs allege that "Defendants took no actions to diversify the Plan's assets and end the Plan's investments in the ConocoPhillips Funds"[32] and that "Defendants' failure to properly diversify the

---

[30]Complaint, Docket Entry No. 1, p. 24 ¶ 105.

[31]Id. at 19 ¶¶ 80-81.

[32]Id. at 25 ¶ 107.

Plan's assets caused the Plan to suffer tens of millions of dollars in losses during the Class Period."[33]

In support of their Motion to Dismiss Defendants argue that (1) the Plan offered a diverse menu of investment options in which participants could invest their assets; (2) the extent of the Plan's holdings in ConocoPhillips was attributable to the participants' elections to retain the ConocoPhillips stock; and (3) section 404(c) of ERISA relieves plan fiduciaries of liability for losses that result from a participant's exercise of control.[34]

Defendants rely heavily on <u>Yates v. Nichols</u>, 286 F. Supp. 3d 854 (N.D. Ohio 2017).[35] The facts of <u>Yates</u> are similar to those of this case: After a spinoff of one company from another, a retirement plan participant sued the plan administrator, the investment committee, and members of that committee for breach of the fiduciary duty to diversify because they placed 6.5% of the plan's total assets into a fund holding only the legacy company's stock. <u>Yates</u>, 286 F. Supp. 3d at 857. Like the Phillips 66 Plan, the plan at issue in <u>Yates</u> was a defined contribution plan. <u>Id.</u>

---

[33]<u>Id.</u>

[34]Defendants' Motion to Dismiss, Docket Entry No. 15, pp. 19-22. Section 404(c) is an affirmative defense that is generally not suitable for resolution by a 12(b)(6) motion. The court therefore has not addressed Defendants section 404(c) argument.

[35]<u>See</u> Defendants the Investment Committee of the Phillips 66 Savings Plan and Sam Farace's Notice of Supplemental Authority, Docket Entry No. 24; Defendants' Reply, Docket Entry No. 43, pp. 12-18.

The district court explained that "because ERISA requires that fiduciaries diversify 'the investments of the plan,' the statute 'contemplates a failure to diversify claim when a plan is undiversified as a whole.'" Id. at 863 (quoting Young v. General Motors Investment Management Corp., 325 Fed. App'x 31, 33 (2d Cir. 2009) (unpublished opinion)). The court held:

> [E]valuating the plan as a whole makes good sense when the plan at issue is . . . a defined-contribution plan where each participant has his or her own account.
>
> In these cases, the plan participants themselves—rather than the plan's trustees or its investment committee—decide how to allocate their contributions among the plan's investment options. The trustees and the investment committee, in other words, have no ability to enforce the diversification requirement on the participants. All they can do, it would seem, is offer a diversified menu of investment options. What seems most critical, then, at least in terms of the trustees' diversification duty, is the range of investment options available to the participants.
>
> Here, there is no question that [the plan], taken as a whole, offered diverse options.

Id. at 864.

The participants in the Phillips 66 Plan decide how to allocate their contributions among the Plan's investment options,[36] and Plaintiffs do not challenge the diversity of the investment options. "Defendants had little, if any, authority under the Plan

---

[36]See Phillips 66 Savings Plan [Summary Plan Description], Exhibit 2 to Defendants' Motion to Dismiss, Docket Entry No. 15-2, pp. 19, 21 ("Do I get to decide how my money is invested? Yes. In fact, it's your responsibility. . . . You can choose to invest in one or more of the plan's investment funds. . . . you can 'mix and match' your funds from among all of the groups. Whichever funds you choose, you're always responsible for selecting and monitoring your investment choices.").

to 'override' the employee investors' decisions to [retain] [ConocoPhillips] stock in order to diversify the actual holdings of the Plan." In re Dell, 563 F. Supp. 2d at 690. "All they can do . . . is offer a diversified menu of investment options." Yates, 286 F. Supp. 3d at 864; see also In re Dynegy, Inc. ERISA Litigation, 309 F. Supp. 2d 861, 896 (S.D. Tex. 2004) (holding that because the self-directed portion of the plan "always included an array of investment options" the plaintiff "does not . . . allege that the Plan was not diversified on its face.").

Plaintiffs challenge the fiduciaries' decision not to force divestiture of the assets in the ConocoPhillips Funds. But the participants could "exchange out of the funds at any time."[37] Because the participants could elect to exchange their assets out of the ConocoPhillips Funds, any amount of the Plan's assets that remained invested in the ConocoPhillips Funds was there by the participants' choice. If plan participants choose to exchange their holdings in ConocoPhillips Funds they may reinvest in the remaining investment options of the Plan, which Plaintiffs do not allege are not diversified. Dividends on the shares of the ConocoPhillips Funds "will automatically be reinvested according to [participants'] current investment allocation election [in the Phillips 66 Plan]."[38]

---

[37]ConocoPhillips U.S. Employee Transition Guide, Exhibit 8 to Defendants' Motion to Dismiss, Docket Entry No. 15-8, p. 6.

[38]Id. at 7.

-22-

Fiduciaries have a duty to diversify "investments of the plan," but the ConocoPhillips funds were "closed to new investments."[39] Because the shares of ConocoPhillips are no longer employer securities, a fiduciary's decision to allocate 25% of the plan's assets to the ConocoPhillips Funds might, hypothetically, violate the duty to diversify the plan's investments. But because the ConocoPhillips Funds were no longer an investment option, and because participants could remove their assets from the ConocoPhillips Funds, the fiduciaries had no power to allocate assets to the ConocoPhillips Funds. The real issue is not diversification but the prudence of the fiduciaries' decision not to force divestiture. Because Defendants did not mandate that participants' assets remain in ConocoPhillips Funds and because Plaintiffs do not allege that the Plan's other investment options are not diversified, Plaintiffs fail to allege that the Plan was not diversified on its face. Plaintiffs have therefore failed to state a claim for relief based on a duty to diversify.

## C. Prudence

Plaintiffs allege that Defendants breached their duty of prudence by permitting participants to retain their interests in the ConocoPhillips Funds in their accounts after the spinoff.[40]

---

[39]Id. at 6.

[40]Complaint, Docket Entry No. 1, pp. 8-14 ¶¶ 32-76.

Plaintiffs allege that the ConocoPhillips stock was an excessively risky and volatile investment and thus an imprudent option.[41]

ERISA requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The Fifth Circuit has stated:

> In determining compliance with ERISA's prudent man standard, courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions. "[ERISA's] test of prudence . . . is one of conduct, and not a test of the result of performance of the investment. The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed." Thus, the appropriate inquiry is "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment."

Laborers National, 173 F.3d at 317 (citations omitted).

"This duty of prudence 'trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary.'" Singh v. RadioShack Corp, 882 F.3d 137, 144 (5th Cir. 2018) (per curium) (citing Dudenhoeffer, 134 S. Ct. at 2468.) The duty of prudence

---

[41] Id.

applies fully to employee-owned stock ownership plans, except that ESOPs need not be diversified. Dudenhoeffer, 134 S. Ct. at 2468. Dudenhoeffer establishes different standards for duty-of-prudence claims based on public information versus insider information. Id. at 2471-72. The Court held that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." Id. at 2471. Unless special circumstances make the market unreliable, "ERISA fiduciaries, who likewise could reasonably see 'little hope of outperforming the market . . . based solely on their analysis of publicly available information,' may, as a general matter, likewise prudently rely on the market price." Id. Such "special circumstances" must "affect[] the reliability of the market price as 'an unbiased assessment of the security's value in light of all public information.'" Id. at 2472.

Defendants argue that "Plaintiffs' Complaint cannot survive scrutiny under Dudenhoeffer and thus does not state a claim for breach of the duty of prudence."[42] Plaintiffs respond that Dudenhoeffer does not apply because unlike the shares of ConocoPhillips, Dudenhoeffer involved employer securities that "fall within ERISA's limited exemption from normal diversification

_____

[42]Defendants' Motion to Dismiss, Docket Entry No. 15, p. 24.

considerations."[43]  Plaintiffs argue that "[w]here, as here, that exemption does not apply, failure to properly diversify must be considered as part of a prudence analysis."[44]  The court is not persuaded by Plaintiffs' argument because in Dudenhoeffer the Court stated that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries," with the limited exception that ESOP fiduciaries are "under no duty to diversify the ESOP's holdings."  Dudenhoeffer, 134 S. Ct. at 2467.

Plaintiffs allege that "the Plan's highly concentrated holding of ConocoPhillips stock at the time of the spin-off, together with public information and ConocoPhillips' poor performance, were red-flags to Defendants that the ConocoPhillips stock was not a prudent investment for the Plan."[45]  Plaintiffs' claim that Defendants breached the duty of prudence by holding the ConocoPhillips Funds is based on publicly available information such as the Vanguard Institutional Index Fund,[46] ConocoPhillips' 10-K,[47] the price of ConocoPhillips stock,[48] the price of oil,[49] website articles,[50] and

---

[43]Plaintiffs' Response, Docket Entry No. 38, p. 27.

[44]Id.

[45]Id. at 28.

[46]Complaint, Docket Entry No. 1, p. 10 ¶ 40.

[47]Id. at 10 ¶ 43.

[48]Id. at 13-16 ¶¶ 57, 65, 67-68.

[49]Id. at 14 ¶¶ 59-62.

[50]Id. at 15-17 ¶¶ 63, 69, 74.

other "publicly available information [that] showed the riskiness of ConocoPhillips stock."[51]  In the absence of special circumstances, the claim is implausible.  _Dudenhoeffer_, 134 S. Ct. at 2471; _see also_ _Singh_, 882 F.3d at 146 (holding that because "the overall decline in the price of [defendant's] stock during the class period shows that the market accounted for [] negative [public] information . . . Plaintiffs' public-information claims are implausible under _Dudenhoeffer_'s general rule").  Plaintiffs have neither alleged in their Complaint nor argued in their Response that any "special circumstances" are present.  Because Plaintiffs have not identified any plausible special circumstances undermining the market price as a measure of ConocoPhillips' value, Plaintiffs fail to state a claim for breach of the duty of prudence based on public information.  _See_ _Singh_, 882 F.3d at 147 (holding that the defendant's heavy debt load and bond-market indicators that the defendant would likely default do not qualify as special circumstances because "the stock market presumably incorporated that information into the price of [defendant's] stock.").

D.  **Failure to Engage in Adequate Process**

Plaintiffs allege that "Defendants had a duty to follow a regular, appropriate systematic procedure to evaluate the ConocoPhillips Funds as investments in the Plan.  They breached that duty and failed to conduct an appropriate investigation of

---

[51]_Id._ at 16 ¶ 69.

continued investment in the ConocoPhillips Funds."[52]   Plaintiffs

also allege that "ConocoPhillips remained an investment option for

the Plan's participants because Defendants did not follow an

appropriate process in evaluating the prudence of the

ConocoPhillips Funds."[53]

"[T]o plead plausibly a breach of the duty of prudence for

failure to investigate, plaintiffs must allege facts that, if

proved, would show that an adequate investigation would have

revealed to a reasonable fiduciary that the investment at issue was

improvident."  Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56,

67 (2d Cir. 2016) (internal quotations and citations omitted).

> But when the alleged facts do not "directly address[] the
> process by which the Plan was managed," a claim alleging
> a breach of fiduciary duty may still survive a motion to
> dismiss if the court, based on circumstantial factual
> allegations, may reasonably "infer from what is alleged
> that the process was flawed."  To survive a motion to
> dismiss, a plaintiff may "allege facts sufficient to
> raise a plausible inference that . . . a superior
> alternative investment was readily apparent such that an
> adequate investigation would have uncovered that
> alternative."

Main v. American Airlines Inc., 248 F. Supp. 3d 786, 793 (N.D. Tex.

2017) (quoting Pension Benefits Guaranty Corp. ex rel. St. Vincent

Catholic Medical Centers Retirement Plan v. Morgan Stanley

Investment Management Inc., 712 F.3d 705, 716 (2d Cir. 2013)

(quoting Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 596 (8th

---

[52]Complaint, Docket Entry No. 1, p. 24 ¶ 102.

[53]Id. at 11 ¶ 45.

Cir. 2009))). "For instance, the complaint may allege facts sufficient to raise a plausible inference that the investments at issue were so plainly risky at the relevant times that an adequate investigation would have revealed their imprudence[.]" Pension Benefits, 712 F.3d at 719.

Plaintiffs' Complaint contains only legal conclusions with no specific factual allegations about the process Defendants engaged in. Moreover, Plaintiffs fail to allege that an adequate investigation would have revealed anything other than the publicly available information allegedly establishing that the ConocoPhillips Funds were a risky investment option. Because Plaintiffs' allegations restate their claim for breach of the duty of prudence based on public information, Dudenhoeffer forecloses their claim. Therefore, Plaintiffs fail to state a claim for failure to engage in an adequate process for evaluating the prudence of continuing to hold the ConocoPhillips Funds.

E.   Claims for Co-Fiduciary Liability

In addition to any liability that a fiduciary may have under any other provision of ERISA, 29 U.S.C. § 1105(a) provides that

    a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

    (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;  or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Plaintiffs allege that the Committee and its individual members and Sam Farace are liable as co-fiduciaries for each other's breaches of their fiduciary duties.[54]  Because the court has concluded that the allegations against all Defendants fail to state a claim for which relief may be granted, the court concludes that Plaintiffs have also failed to state claims against Defendants for co-fiduciary liability.

## V.  Conclusions and Order

For the reasons set forth above, Defendants The Investment Committee of The Phillips 66 Savings Plan and Sam Farace's Motion to Dismiss Plaintiffs' Class Action Complaint (Docket Entry No. 15) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 9th day of May, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[54]Complaint, Docket Entry No. 1, pp. 25-26 ¶¶ 109-116.